IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | No. 2:19-cr-00002-JRG-RSP (1) |
| | § | |
| JAMES ETHAN SHELTON | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's James Ethan Shelton ("Shelton") Motion for Sentence Reduction Under the Compassionate Release Statute, 18 U.S.C. § 3582(c)(1)(A)(i), as Amended by the First Step Act (Dkt. No. 118). The Court, having considered the motion, the response, the record, and the applicable law, finds that the motion must be **DENIED**.

### I. BACKGROUND

On June 13, 2019 Shelton entered a guilty plea for the offense of Conspiracy to Possess with Intent to Distribute and Distribution of 50 Grams or More of Methamphetamine (actual) in violation of 21 U.S.C. § 846. On October 16, 2019, the undersigned sentenced Shelton to 120 months' imprisonment to be followed by a term of five years of supervised release (Judgment, Dkt. No. 109). On April 27, 2020, this Court ordered Shelton's sentence to be reduced to 102 months (Dkt. No. 117).

Shelton pleaded guilty to the following facts: Beginning in or about July 2018, Shelton conspired with others to distribute methamphetamine. Shelton served as a distributor to street-level dealers, receiving the drugs from a supplier and in turn selling for profit.

The docket reflects that Shelton did not file a direct appeal. On April 22, 2020, the Government filed a motion to reduce Shelton's sentence to 102 months (Dkt. No. 117) which this Court granted by Order dated April 27, 2020 (Dkt. No. 117). Shelton filed the present motion on

May 28, 2021 (Dkt. No. 118).  The Court notes that Defendant is currently incarcerated at FCI Oakdale II in Oakdale, Louisiana, with a projected-release date of June 15, 2027.  *See* https://www.bop.gov/inmateloc/ (Register Number 28334-078).

Shelton now seeks compassionate release based on the COVID-19 pandemic and his medical history. Specifically, he highlights that he suffers from morbid obesity and debilitating medical condition(s) thereby rendering him more susceptible to COVID-19 and its effects. (Dkt. No. 118).  Shelton further explains that FCI Oakdale II has a population of about 940 inmates—with 106 of those inmates assigned to the satellite camp. He notes that prisons such as FPC Oakdale II are dangerous places during an outbreak for the following reasons:

- Sharing of bathrooms, laundry and eating areas;

- Toilets rarely are equipped with lids;

- The toilet tank doubles as the sink for hand-washing, tooth brushing and other hygiene;

- Bunking in the same cell (as many as four) and sharing the toilets and sinks;

- No hand sanitizer allowed because of its alcohol content;

- Poor quality of air circulation; and,

- Scarcity of hand-washing soap.

Shelton further explains that mass infections and deaths of many prisoners have occurred at FPC Oakdale which has rendered him powerless to take preventative self-care measures to remain safe from COVID-19.

Moreover, Shelton argues that the leadership of the Oakdale Federal Prison Complex/FCI Oakdale II Satellite Camp, where Shelton is currently incarcerated, "appears to have learned nothing from their past mistakes".  *See* Exhibit 1 to Dkt. No. 119, "Federal prison didn't isolate inmates who tested positive for coronavirus, report finds.".

Shelton argues that his morbid obesity and debilitated medical condition place him at a heightened risk of severe illness or death if exposed to COVID-19. He maintains that his 102 months' imprisonment—of which he has already served under half—coupled with his health issues constitute extraordinary and compelling reasons justifying his early release. Shelton explains that during his incarceration, he has participated in educational, drug treatment and rehabilitative and parenting programs to completion. Currently, Shelton is participating in the FBOP's Non-Residential Drug Abuse Program while maintaining his prison work assignments. If allowed early release, Shelton would reside with his sister.

The Government opposes a sentence reduction in this case. In its Response to Defendant's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) (Dkt. No. 120), the Government explained that "FCI Oakdale II . . . . houses 955 inmates. At present, there is a single inmate who is reported positive. There are . . . 289 current inmates who previously tested positive and have recovered. There has . . . been two Covid-related deaths . . . ".

## II. LEGAL STANDARD

A judgment of conviction imposing a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A), the statute authorizing compassionate release. Under § 3582(c)(1)(A), a district court may grant a sentence reduction if it finds: (1) a defendant "fully exhausted all administrative rights"; (2) "extraordinary and compelling reasons warrant such a reduction"; (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"; and (4) such a reduction is appropriate

"after considering factors set forth in § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The First Step Act of 2018 instituted the first major changes to compassionate release since its authorization in 1984. Pub. L. 115-391, 132 Stat. 5194. Procedurally, the First Step Act removed the Director of the BOP as the sole arbiter of compassionate release. Rather, the law enabled a defendant to move for compassionate release directly in the district court after exhausting their administrative rights. 18 U.S.C. § 3582(c)(1)(A). Prior to this change, BOP retained sole gatekeeping authority over compassionate release petitions. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020). This resulted in underuse and mismanagement.[1] *Id*. Through the First Step Act, Congress sought to mitigate this by "increasing the use and transparency of compassionate release." Pub. L. 115-391, 132 Stat. 5194, 5239 (capitalization omitted).

Substantively, the First Step Act also modified the "extraordinary and compelling reasons" determination. Congress never defined what constitutes "extraordinary and compelling," but rather delegated this determination to the Sentencing Commission.[2] By the text of § 3582(c)(1)(A), any sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." Since the passage of the First Step Act, however, the Sentencing Commission has

---

[1] In 2013, a report from the Office of the Inspector General revealed that the BOP granted compassionate release to only an average of 24 incarcerated people per year. *See* U.S. v. Dep't. of Just. Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* 1 (2013), https://www.oversight.gov/sites/default/files/oig-reports/e1306.pdf (last visited May 24, 2021). And of the 208 people whose release requests were approved by both a warden and a BOP Regional Director, 13 percent died awaiting a final decision by the BOP director. *Id*.; *see also Extraordinary and Compelling: A Re-Examination of the Justifications for Compassionate Release*, 68 MD. LAW. REV. 850, 868 (2009) (nothing that, in the 1990s, 0.01 percent of inmates annually were granted compassionate release).

[2] In 28 U.S.C. § 994(a)(2), Congress granted the Commission broad authority to promulgate "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentencing implementation that in the view of the Commission would further the purposes set forth in [18 U.S.C. § 3553(a)(2)]." And in 28 U.S.C. § 994(t), "Congress instructed the Commission to 'describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" *United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (quoting 28 U.S.C. § 994(t)).

not updated its guidelines on compassionate release. This has caused significant disagreement across the country whether the pre-First Step Act policy statement is still "applicable," and thus binding on district courts.

The Fifth Circuit recently joined the Second, Fourth, Sixth, Seventh, and Tenth Circuits in concluding that the Sentencing Commission's policy statement, § 1B1.13, is no longer binding on a district court. *See United States v. Shkambi*, 2021 WL 1291609 *4 (5th Cir. 2021) (explaining that "[t]he district court on remand is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a). In reaching this conclusion, we align with every circuit court to have addressed the issue.").

Under this new framework, § 1B1.13 still binds district courts on motions made by the BOP; however, for motions made directly by an inmate, district courts may consider any relevant facts in determining if "extraordinary and compelling reasons" exist. *See Brooker*, 976 F.3d at 235-36 (because the First Step Act allows both inmates and the BOP to file compassionate-release motions under § 3582(c)(1)(A), § 1B1.13 now applies only when such motions are made by the BOP and is inapplicable when a compassionate-release motion is made by a defendant); *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) ("A sentence reduction brought about by motion of a defendant, rather than the BOP, is not a reduction 'under this policy statement.'"); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (agreeing with *Brooker* and holding that there is no "applicable" policy statement for § 3582(c)(1)(A) motions after the First Step Act."); *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release.").

Nevertheless, despite this newfound discretion, district courts are not without guidance in determining whether "extraordinary and compelling" reasons exist. Congress has explicitly limited that "[r]ehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added). Furthermore, the Sentencing Commissions' policy statement and commentary remains persuasive. *See United States v. Logan*, No. 97-CR-0099(3), 2021 WL 1221481 (D. Minn. Apr. 1, 2021) (finding that § 1B1.13's definition of "extraordinary and compelling" should be afforded "substantial deference . . . as such deference is consistent with the intent (even if not mandated by the letter) of § 3582(c)(1)(A)").

The policy statement—found in Application Note 1—provides that "extraordinary and compelling reasons" exist when: (1) a terminal illness or other medical condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility"; (2) a defendant, who is at least 65 years old, "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment"; and (3) a defendant has minor children without a caregiver or with an incapacitated spouse or partner who needs the defendant to be the caregiver. U.S.S.G. § 1B1.13, n.1(A)-(C). Finally, the BOP Program Statement 5050.50 ("PS 5050.50"), amended after passage of the First Step Act, describes the factors the BOP considers grounds for compassionate release. *See* PS 5050.50 para. 3-6. These grounds are similar to the reasons identified by the Sentencing Commission, but also include a list of factors like rehabilitation and circumstances of the offense.[3] *Id*.

---

[3] PS 5050.50's nonexclusive factors are: "the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans, and '[w]hether release would minimize the severity of the offense.'" *United States v. Saldana*, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting PS 5050.50 para. 7).

6

In accordance with this guidance, district courts throughout the country have identified additional situations in which "extraordinary and compelling reasons" exist. While rehabilitation alone is not an "extraordinary and compelling" reason justifying compassionate release, it can be a factor warranting a reduction when an inmate has an otherwise qualifying condition.[4] *See United States v. Rodriguez*, 451 F.Supp.3d 392, 405 (E.D. Pa. 2020) (noting that the Sentencing Commission itself interpreted § 3582(c)(1)(A) as allowing consideration of an inmate's rehabilitation). If an inmate demonstrates a long, comprehensive record of rehabilitation, the question becomes whether injustice would occur if the person remains incarcerated. *See Brooker*, 976 F.3d at 268 (identifying "the injustice of [a] lengthy sentence" as a factor that may weigh in favor of a sentence reduction).

Additionally, courts examine any changes in law and the sentencing guidelines when determining whether a sentence is extraordinary. Specifically, for example, courts grant compassionate release at a remarkable rate for inmates subject to the now-abolished § 924(c) sentencing-staking. *See, e.g.*, *McCoy*, 981 F.3d at 285 ("As the court observed in *Bryant*, multiple district courts have concluded that the severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence of a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief under § 3582(c)(1)(A)."). Though Congress did not retroactively eliminate § 924(c) sentence-staking, courts consider whether the outdated policy warrants relief on a case-by-case basis.[5]

---

[4] Title 18 U.S.C. § 3142(g) aids the Court in determining whether a defendant is a danger to the community. Applicable factors include: "the nature and circumstances of the offense," "the person's character, physical and mental condition, family ties, employment, . . . criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

[5] *See* Shon Hopwood, *Second Looks & Second Chances*, 41 Cardozo LAW. REV. 83, 123-24 (2019) (arguing Congress did not make § 924(c) sentence-stacking retroactive because it did not want to make all inmates "*categorically*" eligible for sentencing relief, but Congress meant for relief from draconian sentences to apply "*individually*").

Even if extraordinary and compelling reasons exist, such reasons must outweigh the 18 U.S.C. § 3553(a) factors to warrant a sentence reduction. *See* 18 U.S.C. 3582(c)(1)(A). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .
>
> (5) any pertinent [Sentencing Commission] policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

*Id*. § 3553(a).

### III. DISCUSSION

**A. Satisfaction of § 3582(c)(1)(A)'s Exhaustion Requirement**

Shelton's motion for compassionate release may only be considered if he first meets the statute's exhaustion requirement. Courts may not consider modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such modification is properly made by the Director of the BOP or by a defendant who has fully exhausted their administrative remedies. *See* 18 U.S.C.

§ 3582(c)(1)(A). Exhaustion of administrative remedies in this context requires a denial by the warden of the defendant's prison facility or waiting thirty days without receiving a response to a request.[6] *Id*.

Crucially, the exhaustion requirement within § 3582(c)(1)(A) cannot be waived. *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . ."); *United States v. Reeves*, 2020 WL 1816496 *2 (W.D. La. Apr. 9, 2020) ("While the Court is well aware of the effects of the COVID-19 pandemic . . . § 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse Reeve's failure to exhaust his administrative remedies or to waive the 30-day waiting period."). Consequently, if a defendant has not first sought relief from the BOP—or has not waited thirty days—the Court may not consider his motion.

Here, Shelton explains that he has satisfied and exhausted his administrative remedies before filing the present motion. Shelton submitted his request for a reduction in sentence to the ward at FCI Oakdale II and was denied on May 19, 2021. (Attachment 2, Dkt. No. 122).

The Court finds that Shelton has properly exhausted his administrative remedies. Next, the Court turns to whether extraordinary and compelling reasons exist for his compassionate release.

---

[6] BOP regulations define "warden" to include "the chief executive officer of . . . any federal penal or correctional institution or facility." 28 C.F.R. § 500.1(a); *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020); *c.f. United States v. Campagna*, 2020 WL 1489829 *3 (S.D.N.Y. Mar. 27, 2020) (holding that "the denial of Defendant's request by t he Residential Re-entry Manager suffices to exhaust his administrative rights").

**B.     Shelton Failed to Establish Extraordinary and Compelling Reasons Justifying Compassionate Release**

The remaining question is whether Shelton has satisfied the "extraordinary and compelling reasons" requirement. As mentioned, Shelton seeks compassionate release based on (1) the COVID-19 pandemic while imprisoned, (2) his medical conditions that render him more susceptible to COVID-19 infection, (3) the changes to 18 U.S.C. § 924(c), and (4) his lengthy sentence.

      1. COVID-19 Pandemic and the BOP

Shelton first maintains that the BOP's self-reported statistics indicate: (1) "105 federal inmates and 172 BOP staff . . . have confirmed positive test results for COVID-19 nationwide"; (2) "46,116 inmates and 6,756 staff have recovered"; and (3) "234 federal inmate deaths and 4 BOP staff member deaths attributed to COVID-19 disease." (Exhibit 2, Dkt. No. 119). Through the report Shelton offered as Exhibit 1 to Dkt. No. 119, Oakdale Federal Prison Complex/FCI Oakdale II Satellite Camp was criticized in its handling of the coronavirus outbreak.

However, an inmate cannot satisfy the "extraordinary and compelling reasons" requirement by simply citing to COVID-19 statistics or through sweeping allegations about a prison's ability or inability to contain the outbreak. *See United States v. Koons*, 455 F.Supp.3d 285, 290-91 (W.D. La. 2020). In other words, the mere spread of COVID-19 inside prisons and jails—standing alone—is neither an extraordinary nor compelling reason to justify compassionate release. *Id*. at 291 ("The Court stresses the point that the rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not grounds to justify a finding of extraordinary and compelling circumstances.").

The rampant spread of COVID-19 within correctional institutions—and the conditions of confinement that result from that spread—are applicable to *all* inmates who are currently

10

imprisoned and, thus, are not unique to any one inmate. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). If the "extraordinary and compelling reasons" requirement in this context hinged solely on the mere spread of COVID-19 within correctional institutions, then federal courts would be obliged to release every inmate. *See Koons*, 455 F.Supp.3d at 291 ("The Court cannot release every prisoner at risk of contracting COVID-19 because the Court would then be obliged to release every prisoner.").

Here, Shelton highlights statistics concerning how many inmates within the BOP have contracted COVID-19 and how many inmates have unfortunately died as a result of the virus. He further contends that press reports have identified the BOP's failure to contain the virus. Such claims are general allegations rather than individualized allegations that relate specifically to Shelton. Therefore, to the extent that Shelton raises general allegations concerning the conditions of confinement at FPC Oakdale as grounds for relief, his request for compassionate release lacks merit. *See United States v. Vasquez*, 2020 WL 3000709 *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence.").

### 2. Shelton's Medical Conditions

Shelton argues that "extraordinary and compelling reasons" exist in his case because he is "morbidly obese and has suffered at least three recent seizures" and has "numerous underlying medical conditions." The Court notes that Shelton has submitted documentation as exhibits to his

motion attempting to demonstrate that he suffers from one or more of these conditions (Dkt. No. 122).

Even though Shelton provided records in an attempt to support his medical assertions, the Court finds that his medical conditions are not severe enough to constitute "extraordinary and compelling." *See Shkambi*, 2021 WL 1291609 at *4 (explaining that the district court has discretion to decide whether moving inmate's conditions present extraordinary and compelling reasons justifying a reduction in sentence). Shelton's conditions—morbid obesity, seizures and underlying medical conditions—are not terminal illnesses and Shelton has not alleged or shown that his conditions substantially diminish his ability to provide self-care.

Indeed, as Shelton highlights, the Center for Disease Control (CDC) cautions that "[t]he more underlying medical conditions someone has, the greater the risk is for severe illness from COVID-19." (Exhibit 7, Dkt. No. 119). *See United States v. Mondragon*, 2021 WL 951787 *4 (E.D. Tex. Mar. 2021) (explaining that the CDC has found that comorbidities such as obesity, hypertension, and diabetes result in a higher risk of severe COVID-19 symptoms). Nevertheless, despite this increased risk, these comorbidities are not "extraordinary"—as the sheer prevalence of these conditions both inside and outside of prison do not render them unordinary. *Id*. ("According to the CDC, 42.5% of the adult population is obese and 73.6% is overweight."). Due to its prevalence, obesity cannot be deemed "extraordinary" in order to merit compassionate release. *See United States v Harmon*, 834 F. App'x 101, 101 (5th Cir. 2021) (affirming denial of compassionate release to a 52-year old woman who was obese with a body mass index of 36); *United States v. Grant*, No.16-00172-01, 2021 WL 149308, at *4 (W.D. La. Jan. 15, 2021) (noting that "while obesity is an underlying medical condition that poses increased risk of severe illness from COVID-19, courts have found that obesity—alone or even paired with other medical

conditions—does not provide adequate grounds for compassionate release"); *United States v. Sentimore*, No. 04-382, 2020 WL 7630778, at *2 (E.D. La. Dec. 22, 2020) (finding that defendant's morbid obesity did not rise to the level of an extraordinary and compelling circumstance that would justify his early release); *United States v. Gordon*, No. 15-20609, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release to an obese defendant, reasoning that because "42.4% of American adults are obese and [an] additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted").

Similarly, Shelton's obesity and underlying medical conditions do not constitute "extraordinary" reasons such that compassionate release is warranted. Courts have found that both medical conditions—alone or in conjunction with other medical conditions—do not provide adequate grounds for compassionate release. *See, e.g.*, *Harmon*, 834 F. App'x at 101; *United States v. Williams*, 2021 WL 414825 *3 (M.D. La. Feb. 2021) (denying compassionate release to an inmate with Type 2 diabetes and obesity because there was no evidence these conditions had diminished his ability to provide self-care while imprisoned); *Mondragon*, 2021 WL 951797 at *3 (finding that hypertension, diabetes, and obesity do not meet the criteria for compassionate release).

Here, while Shelton has explained that he suffers from morbid obesity and underlying medical conditions, his conditions do not constitute extraordinary and compelling reasons for compassionate release. He does not allege that he cannot perform self-care while imprisoned because of his medical conditions; rather, he simply highlights how he has been diagnosed. As previously explained, however, mere diagnosis without more and the general fear of contracting COVID are insufficient to justify compassionate release.

Also, it is noted that Shelton has been vaccinated against COVID-19. (Attachment 1, Dkt. No. 122).

### 3. Shelton's Sentence and Rehabilitation

Shelton lastly contends that his sentence of 102 months (a reduction from his original 120 months' imprisonment) constitutes "extraordinary and compelling" reasons justifying compassionate release. Moreover, he insists he has dedicated a significant amount of effort toward his rehabilitation by completing parenting, drug and educational programs. While the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Shkambi*, 2021 WL 1291609, at *3; *Brooker*, 976 F.3d at 228, 237-38 (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."); *cf. United States v. Whitehead*, 986 F.3d 547, 551 (5th Cir. 2021) (upholding the denial of a sentence reduction from a life sentence and finding that the court may, but is not required, to consider a defendant's postconviction rehabilitative efforts when evaluating a motion for reduction under § 404 of the First Step Act). The Court finds that these claims do not establish "extraordinary and compelling" reasons for compassionate release.

With respect to his sentence, the Court first notes that Shelton was originally sentenced to 120 months' imprisonment for Count One, Conspiracy to Possess with Intent to Distribute and

14

Distribution of 50 Grams or More of Methamphetamine (actual) in violation of 21 U.S.C. § 846. On April 27, 2020, this Court ordered Shelton's sentence to be reduced to 102 months. The facts of his offense demonstrate Shelton conspired with others to distribute methamphetamine and served as a distributor to street-level dealers, receiving the drugs from a supplier and in turn selling for profit.

An examination of Shelton's Presentence Investigative Report (PSR), shows that he has an extensive criminal history to include drug possession, theft, receipt and concealment of stolen property, manufacturing and/or delivery of a controlled substance, unlawful possession of a firearm and assault thereby demonstrating a danger to the community and therefore precluding a granting of compassionate release.

By his own admission, Shelton has served significantly less than half of his already reduced sentence. The Fifth Circuit has recognized that the "courts that granted compassionate release [on the basis of pre-existing medical conditions] largely have done so for defendants who had already served the *lion's share* of the sentences and presented multiple, severe, health concerns." *Thompson*, 984 F.3d at 434-35 (emphasis added); *see also United States v. Muniz*, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020) (granting compassionate release for COVID-19 for a defendant who had served 80% of his reduced sentence and suffered from end-stage renal disease, diabetes, and hypertension).

Shelton has served slightly less than 21% of his sentence. Shelton has not served more than half or the "lion's share" of his sentence. Consequently, the Court finds that serving 21 months of his reduced sentence is not a just punishment for an offense that carries a punishment of 102 months imprisonment. *See United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020) (affirming the denial of a compassionate release motion and explaining that "[i]nstead, the court

15

concluded that 'releasing [Chambliss] after serving only 14 years of a 30-year sentence minimizes both the impact of [Chambliss'] crime and seriousness of the offense.'").

### III. CONCLUSION

Shelton has failed to meet the "extraordinary and compelling reasons" requirement under 18 U.S.C. § 3582(c)(1)(A) warranting compassionate release. *See United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 2019) (citation omitted) (stating that the defendant generally "has the burden to show circumstances meeting the test for compassionate release"). General fear of contracting COVID-19 and the mere spread of COVID-19 within prison settings are not sufficient grounds warranting compassionate release. Moreover, Shelton's underlying medical conditions, while unfortunate, are not severe enough to constitute "extraordinary and compelling" reasons justifying compassionate release—and, finally, he has not served the "lion's share" of his sentence. Given Shelton's failure to satisfy § 3582(c)(1)(A)'s requirements, the Court need not address whether the applicable 18 U.S.C. § 3553(a) factors support a sentence reduction.

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same). Compassionate release is one of those exceptions—but a defendant must conform to both the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify sentence. Since Shelton has failed to meet the controlling requirements for compassionate release under § 3582(c)(1)(A), his motion must be denied.

Accordingly, **IT IS ORDERED** that Defendant James Ethan Shelton's Motion for Sentence Reduction Under the Compassionate Release Statute, 18 U.S.C. § 3582(c)(1)(A)(i), as Amended by the First Step Act (Dkt. No. 118), is **DENIED**.

**So ORDERED and SIGNED this 26th day of January, 2022.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE